STANDIFER V. MORRIS *et al.*

No. 416. Opinion Filed March 8, 1910.

(108 Pac. 413.)

1.    **IMPROVEMENTS—Occupying Claimant's Act.** M., after the execution to him of a void tax deed, in good faith went into possession of the lots conveyed and erected thereon improvements of the value of about a thousand dollars. After taking possession of the lots, he borrowed money from S. upon his promissory note secured by mortgage on said premises, which money he expended in placing said improvements on said lots. Afterward, and after the execution and recordation of said mortgage, M. removed from said premises and leased the same to H., who went into possession as the tenant of M. Afterward M. executed a warranty deed to said lots to H., who was and is still in possession. Held that, upon a suit to foreclose said mortgage, S., upon equitable grounds, was entitled to the benefit of the occupying claimant's act.

2.    **LANDLORD AND TENANT—Estoppel to Deny Landlord's Title.** The general doctrine of estoppel precludes a tenant during the continuance of his possession under a lease from buying in and setting up an adverse title to defeat a lien on the improvements on the leased premises acquired by a mortgagee in good faith from the landlord of the lessee prior to the execution of the lease. This rule does not, however, prohibit the tenant during the tenancy from purchasing any outstanding title and from asserting the same against the landlord after the expiration of the tenancy and yielding up of possession.
(Syllabus by the Court.)

*Error from District Court, Cleveland County; C. F. Irwin, Judge.*

Action by Thomas Standifer against John W. Morris and others. Judgment for defendants, and plaintiff brings error. Reversed.

*John H. Mozier* and *J. B. Dudley,* for plaintiff in error.—Citing: *Smith v. Smith,* 15 Kan. 290; *Stebbins v. Guthrie,* 4 Kan. 354; *Uhl v. Grissom,* 12 Okla. 322; 16 A. & E. Enc. L. (2d Ed.) pp. 93, 100, and cases cited; *Mercer v. Justice* (Kan.) 65 Pac. 219; *Cleveland v. Clark* (Mich.) 81 A. S. R. 161; *Parsons v. Moses,* 16 Iowa, 440; *Houghton v. Allen* (Cal.) 14 Pac. 641; *Laughlin v. Braley,* 25 Kan. 102; *Fletcher v. Brown* (Neb.) 53 N. W. 577;

*Mills v. Greer,* 111 Ga. 275; *Dean v. Feely,* 67 Ga. 804; 20 A. &. E. Enc. L. (2d Ed.) pp. 915-918, and cases cited; Story, Eq. Juris. 779; Pomeroy, Eq. Juris. 1241; Jones on Landlord and Tenant, p. 806, sec. 689.

*Newell & Jackson,* for defendants in error.—Citing: *Board of Regents v. Linscott,* 30 Kan. 240; *Coonradt v. Myers,* 31 Kan. 30; *Uhl v. Grissom,* 12 Okla. 322; *Lunquest v. Ten Eyck,* 40 Iowa, 213; *Clussen & Kuehl v. Rayburn,* 14 Iowa, 136; *Smith v. Smith,* 15 Kan. 290; *Stebbins v. Guthrie,* 4 Kan. 354.

KANE, J. Originally this was a suit commenced by the plaintiff in error, plaintiff below, against the defendants in error, John W. Morris and Mrs. John W. Morris, his wife, and Chas. J. Howard and Mrs. Chas. J. Howard, his wife, to recover judgment against the defendant in error John W. Morris upon a promissory note, and to foreclose a real estate mortgage given by said Morris to secure the payment of said note, covering lots 27, 28, 29, 30, 31, and 32, in block 31, of the town of Noble, Cleveland county, Okla. Mrs. Morris, Chas. J. Howard, and wife were made defendants for the purpose of foreclosing whatever interest they may have had in the property. Ella A. Foster was made a party upon her petition in intervention, setting up title to lots 27, 28, 29, and 30. Howard and wife filed separate answers, claiming title to lots 31 and 32 by virtue of a deed executed to them by Samuel Lazarus, who deraigned title from the town-site board of the town of Noble, and further alleged that plaintiff's mortgage was based upon a void tax deed, which purported to convey title to Morris. Ella Foster deraigned her title to lots 27, 28, 29, and 30 from the town-site commission, and she also claimed that the tax deed through which Morris claimed title to those lots was void.

It is conceded by all the parties that Morris claimed title through a tax deed, and that the tax deed was void, but the plaintiff by way of reply alleged, in substance, that on the 5th day of September, 1894, lots 31 and 32 were sold by the treasurer of Cleveland county for taxes to L. F. Weeks, and certificate of tax sale issued therefor, and thereafter a tax deed was also issued to Weeks;

that the tax deed was never filed for record; that thereafter Weeks conveyed all her right, title and interest in said certificate of tax sale and deed to F. W. Weeks, who in turn conveyed all his interest therein to R. F. Ellinger; that thereafter said lots were again sold for taxes to plaintiff, and a tax certificate issued to them therefor; that thereafter he sold and transferred his certificate of tax sale to said Ellinger, who in turn sold and conveyed his interest therein to said lots to Morris; that thereafter said Morris went into possession of said premises believing himself to be the owner thereof, and in good faith placed the improvements thereon of the value of $800 or $1,000; that while in the possession of said premises, and believing himself to be the owner thereof, he executed the mortgage in controversy to plaintiff; that the money borrowed from the mortgagee and secured by said mortgage was expended in placing said improvements on said lots; that, even if the tax deed is void, the plaintiff as the mortgagee and assignee of Morris, the mortgagor, is entitled to a lien on the improvements thereon under and by virtue of the occupying claimant's act. The defendants Morris and wife were duly served with summons, and made default, and judgment was rendered against them for the amount due upon the note, and a decree entered foreclosing the mortgage of plaintiff on said lots as against the Morrises. Thereafter the cause as to the other parties was tried to the court, without a jury, and a final judgment was rendered against the plaintiff, in favor of the defendants Howard and wife, canceling the mortgage so far as it affected lots 31 and 32, and quieting the title of the defendants Howard and wife, and a decree of like effect in favor of Ella Foster in relation to the balance of the lots. To reverse these judgments and decrees this proceeding in error was commenced.

Counsel for plaintiff in error state the questions presented to this court as follows: (1) Is Morris entitled to the improvements that he placed upon lots 31 and 32, as against Howard and wife, who are grantees of Lazarus, the original owner of said lots, under the occupying claimant's act, and, if so, is Standifer, as mortgagee

and assignee of Morris, entitled to have his mortgage foreclosed as to these improvements under the occupying claimant's act? (2) Did Howard and wife occupy lots 31 and 32 in block 31 as tenants of Morris, and, if so, can they, without surrendering back the possession to Morris, dispute his title to said lots or acquire an adverse interest therein? (3) Did not Howard and wife, when they purchased these lots from Lazarus, buy them subject to the mortgage lien of Standifer, and are they not now estopped from defeating his mortgage?

Counsel for defendants in error contend that all of these questions should be answered in the negative, for the reason that a claimant must be in actual possession of the improvements and hold some kind of title at the very time the improvements are made, and must be in possession at the very time he is sought to be ousted, and make his claim to his improvements at the very time and while yet in possession. The facts upon which this contention is based are substantially as follows: It is admitted that Morris went into possession of the property under a void tax deed; that after the execution of the tax deed he went into possession of the lots involved and erected improvements thereon of the value of something like a thousand dollars; that after issuance of this tax deed to him he borrowed the money involved in this controversy from the plaintiff and executed his promissory note secured by the mortgage sought to be foreclosed; that the money borrowed from the mortgagee was expended in placing said improvements on said lots; that some time thereafter he removed from the premises and rented the same to Howard for $8 per month; that while Howard was in possession as the tenant of Morris, and after the execution of the mortgage to the plaintiff, he secured a deed from the holder of the legal title, and afterwards, while yet a tenant of Morris, he purchased his (Morris') equity for the sum of $50. Counsel for the defendants in error, in their brief, state their theory of their case as follows:

"Our contention is that Morris himself, if he had not made the deed to Howard, could not have set up the claim of an occupy-

ing claimant after he had moved out of the house and had surrendered possession."

With this contention of counsel we cannot agree. To our minds the possession of Morris, through Howard, his tenant, was sufficient to sustain his rights as an occupying claimant against any one seeking to eject or throw him out of possession until he was paid the full value of all the valuable improvements made on the premises. Jones on Landlord & Tenant, § 689, states the rule governing the rights of Morris and his tenant as follows:

"The general doctrine of estoppel precludes a tenant during the continuance of his possession under a lease from buying in and setting up an adverse title to defeat an action of ejectment or a suit for rent. This rule does not, however, prohibit the tenant, during the tenancy, from purchasing any outstanding title and from asserting the same against the landlord after the expiration of the tenancy and yielding up of possession."

There is no pretense that Howard ever delivered possession of the premises to Morris, or that their relation of landlord and tenant was ever terminated. It is doubtful, though, even if he had delivered possession to Morris, if he could defeat the right of the plaintiff under his mortgage. At the time this mortgage was made, Morris undoubtedly had a right to possession, and a right to recover the value of the improvements placed on the lots under the occupying claimant's act. When he borrowed the money from the plaintiff for the purpose of erecting improvements on these lots, it would be but equitable to presume that he intended to mortgage all the interest of whatever kind he had in the property, and secure as fully as possible the mortgagee from whom he borrowed the money to make the improvements. The mortgage being of record, Howard was charged with notice of this condition at the time he went into possession as a tenant and when he secured the deed from Morris at a nominal figure it would be inequitable to hold that this deed also transferred to him free of incumbrance improvements of the value of something like a thousand dollars, which were largely placed upon the lots with the plaintiff's money. We think the beneficent principles of equity are broad enough to pro-

tect the plaintiff against an injustice of this kind without the aid of the occupying claimant's act. It has been held that:

"The adjustment of the rights of occupying claimants is a matter of equitable cognizance; and courts may, in addition to the relief provided by statute, and as supplementary thereto, make such orders as are equitable and just in matters not specifically provided for by the statute." (*Mercer v. Justice,* 63 Kan. 225, 65 Pac. 219; *Cleland v. Clark,* 123 Mich. 179, 81 N. W. 1086, 81 Am. St. Rep. 161.)

"It is a well-settled principle of equity, moreover, that when a *bona fide* possessor of property makes meliorations upon it in good faith and under an honest belief of ownership, and the real owners is for any reason compelled to come into a court of equity for relief, that court, applying the familiar maxim that he who seeks equity must do equity, will compel him to pay for those improvements, as far as they are permanently beneficial to the estate and enhance its value." (Story on Equity Jurisprudence, § 779; Pomeroy on Equity Jurisprudence [2d Ed.] § 1241.)

We think an application of the occupying claimant's act will work substantial justice between the parties to this suit, and that upon equitable grounds the decree of foreclosure entered in this case ought to be set aside and one entered giving the plaintiff the benefit thereof.

It is therefore ordered that the decree of foreclosure formerly entered in this cause shall be set aside, and that one be entered in conformity with this decision.

All the Justices concur.