## REUCK v. GREEN.

No. 10243—Opinion Filed Dec. 13, 1921

(Syllabus.)

1. **Appeal and Error—Equity Case—Instructions—Province of Judge.**

In cases of equitable cognizance, the judge may call a jury, or consent to one, for the purpose of advising him on questions of fact, and he may adopt or reject their conclusions, as he may see fit, and instructions offered by the parties furnish no ground of error on appeal. It is not only the right, but the duty of the court in such cases to finally determine all questions of fact as well as of law.

2. **Same—Review—Sufficiency of Evidence.**

In a civil action, where the parties are not entitled to a trial by jury as a matter of right and where the sufficiency of the evidence is challenged, it is the duty of the Supreme Court to consider and weigh all the evidence, and if the judgment of the trial court is not clearly against the weight of the evidence, it will be sustained.

3. **Same—Insufficiency of Evidence.**

In all actions which were cognizable only in a court of chancery, it is the duty of the Supreme Court to consider the whole record, and weigh the evidence, and when the judgment of the trial court is clearly against

the weight of the evidence, render, or cause to be rendered, such judgment as the trial court should have rendered.

**4. Improvements — Occupying Claimants— Equitable Adjustment of Rights.**

The adjustment of the rights of occupying claimants is a matter of equitable cognizance; and courts may, in addition to the relief provided by statute, and as supplementary thereto, make such orders as are equitable and just in matters not specifically provided for by the statute.

**5. Same — Foreclosure of Mortgage Lien— Judgment—Modification.**

The judgment of the trial court modified and affirmed, and cause remanded, with directions to the trial court to make an accounting and adjust the equities between the parties in the matter of rents and taxes, assessments, insurance, repairs, if any, since the trial below.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by Maggie Reuck against H. A. Green, to declare a deed to be a mortgage, etc. Judgment for defendant, and plaintiff brings error. Modified and affirmed.

Harrod & Harrod, I. W. Bane, and Ernest W. Thomas, for plaintiff in error.

Shirk, Danner & Fowler, for the defendant in error.

JOHNSON, J. On the 5th day of January, 1917, Maggie Reuck, as plaintiff, commenced an action in the district court of Oklahoma county against H. A. Green, as defendant, and thereafter on the 29th day of August, 1917, the plaintiff filed her amended petition, and thereafter, on the 23rd day of October, 1917, the defendant filed an amended answer, and thereafter, on the 5th day of November, 1917, the plaintiff filed a reply to the defendant's amended answer, and thereafter the trial of said cause in said court to the court and jury was commenced on the 23rd day of January, 1918, and concluded on the 25th day of January, 1918, and resulted in a judgment in favor of the defendant in the sum of $5,430.40, with interest thereon at the rate of 6 per cent. per annum and an alternative judgment in favor of the plaintiff granting her the right within six months from date thereof, to satisfy the defendant's judgment, and providing that in default of the payment of said amount an order of sale issue directing the sheriff to sell the property in question in satisfaction of the defendant's judgment, providing that in the event the plaintiff should pay off the defendant's judgment, he should issue to her a deed to the premises. To reverse such judgment, the plaintiff has regularly commenced this proceeding in error.

The position of the parties in this court is the same as it was in the trial court.

The record discloses that for several years prior to the date of the transaction out of which this litigation originally arose there existed between plaintiff and defendant the relation of mortgagor and mortgagee. Many transactions and semi-annual accountings were had during the time. Matters were more or less complicated from the date of the maturity of the first loan made by the defendant to the plaintiff, in January, 1915, as interest and amounts advanced by the mortgagee were not paid at maturity, and other items were permitted to pass without payment, and the further fact that insurance premiums, taxes, special assessments, and some other charges were paid by the mortgagee and he received from the tenants occupying the premises, or from the mortgagor, the rents accruing, and from time to time paid. On January 3, 1915, the mortgagor, being unable to pay the amount then due on a $2,150 note and mortgage and interest, together with taxes, etc., advanced, executed and delivered to the defendant in error, being the mortgagee, a deed of general warranty, passing title of the mortgaged property to him. At the same time, and simultaneously with the execution, acknowledgment, and delivery of such deed, a contract was entered into between these parties and one Burnham, wherein it was and is provided that the mortgagor was unable to pay the indebtedness then due, and that in consideration of executing and delivering to the mortgagee a deed, the latter agreed with one M. B. Burnham that if he would pay $500 on the indebtedness on or before May 1, 1915, and execute a note and mortgage securing the balance for a period of one year, title to the property would be passed from either the mortgagor or the mortgagee to Burnham. Inasmuch as the initial payment of $500 was not made by Burnham, the mortgagee placed the deed of record and took actual possession of the property, and in the spring of 1916, more than one year after the giving and delivery of the deed, the grantee, or the defendant in error, began the construction of certain improvements and prosecuted the work until about completed, when suit was filed in January, 1917, two years after the giving of the deed. In the interim he had continued, uninterrupted, and undisputed possession of all of the premises, and without interference of any character, until the institution of the suit.

The plaintiff alleged in the first paragraph of her amended petition that she was the owner in fee simple of the property involved, to wit, lots 39 and 40, block 18, Shields Heights, being a subdivision of block 18, Summers addition to Oklahoma City, of the value of $5,000. She alleged in the second paragraph of her amended petition that on February 3, 1915, she, to secure the indebtedness she supposed she owed defendant, conveyed to him a mortgage in the form of a deed on said premises, and at the same time and date, and as one transaction, executed and delivered to the defendant a defeasance contract which provided, among other things, that such deed was not to be recorded until the 1st of May, 1915; and alleged that the defendant breached such contract by causing said deed to be recorded before such time. In the fourth paragraph of her amended petition, as to the defeasance contract which stated that she was indebted to defendant in the sum of $2,150, she alleged that such sum was false and untrue, and that through false and fraudulent representation the defendant represented to said plaintiff that he had advanced taxes and paid out for her, at her request, special taxes on said premises amounting to said sum; that the years defendant advanced the taxes were from 1911 to 1914, inclusive. And in paragraph 5 of her amended petition she alleged that on January 8, 1915, she paid over to the defendant the rents she received from said premises, to be credited on her indebtedness to defendant, to the amount of $904.50, and that thereafter she allowed the defendant to collect rents on said premises from her tenant, and that he had since collected the sum of $700, making a total that the defendant had been paid on account, the sum of $1,604.50; and in the seventh paragraph of her amended petition she avers that she now offers to pay whatever sum may be found due, if any, to the defendant, that she has neither knowledge nor information to form a belief as to what sum is really due defendant, and asks that the defendant be required to give strict proof thereof.

The plaintiff alleged in the 10th paragraph of her amended petition that the first time she learned that the defendant claimed to be the owner of the premises was in December, 1916; that prior to such date, and from February 3, 1915, the defendant was collecting the rents for her from her tenant.

The plaintiff alleged in her amended petition that the deed was executed only to secure her debt to the defendant, and that she had a right of redemption, and asked that the defendant be compelled to make a full accounting of all rents collected by him and all money advanced by him, and for what purpose it was so advanced to the plaintiff, and asked that the deed be declared to be a mortgage, and that she have the right of redemption by paying whatever might be found due to the defendant, if any, and that on the payment of the same he be ordered to convey said premises to plaintiff.

The defendant, in his answer to the amended petition of plaintiff, denied the allegations thereof, except such as were specifically admitted.

In the second paragraph of the defendant's answer, he alleged that, prior to the execution of the deed and defeasance contract pleaded by plaintiff, he had made to the plaintiff numerous loans of money at different times, giving the date of each loan and the amount thereof, and admitted that for a limited time prior to the execution of such deed and contract he had collected rents upon the premises, but averred that he had applied the sums to the plaintiff's credit on her indebtedness to him on account of such loans and taxes and special assessments paid by him upon the premises, and that on account of these sums loaned and advanced by the defendant to the plaintiff, and after applying thereon the rents collected by him, which were the only sums whatever that the plaintiff had paid to the defendant to apply on the mortgage indebtedness represented by the several loans aforesaid, and that in addition to such loans the defendant paid from time to time ad valorem taxes and special assessments against the property at the special instance and request of the plaintiff.

In the third paragraph of the defendant's answer he alleged that on the 3rd day of February, 1915, the plaintiff was in default of making payments on her mortgages and that the defendant was about to foreclose, and that on said date an accounting was had between the parties and all sums advanced by the defendant were accounted to the plaintiff, and after a full, complete, and correct accounting between the plaintiff and defendant there was due to the defendant from the plaintiff a sum in excess of $2,150, and that the real estate in controversy was not at the time worth a sum exceeding $1,800, and in order to liquidate the obligation and cancel the indebtedness from the plaintiff to the defendant, the plaintiff executed and

delivered to the defendant her warranty deed, which was filed for record on the 27th day of April, 1915; that there was likewise entered into a contract between the plaintiff and defendant and one M. R. Burnham by the terms, provisions, and conditions of which the said Burnham was to become the owner of the real estate and premises described upon there being paid to the defendant by her the sum of $500 on the first day of May, 1915, and upon such payment there was to be delivered to her a warranty deed to the premises, and the deed from plaintiff to defendant in that event was to become null and void, and to be delivered to M. R. Burnham.

And the defendant alleged in the 4th paragraph of his answer that shortly after the making, executing, and the delivery of said contract, M. R. Burnham made it known that she would be unable to secure the said $500 upon the delivery of the deed, and whereupon the deed executed by the plaintiff to the defendant should be placed of record, and that said deed delivered by the plaintiff to the defendant, conveying to him title to the property, was intended by all of the parties to be absolute and was in fact and in law an absolute conveyance.

The defendant alleged in the 5th paragraph of his answer that, subsequent to the 3rd day of February, 1915, he placed upon the real estate mentioned substantial improvements, and since then had had undisputed possession thereof and had been exercising full and complete control and dominion.

Wherefore defendant prays that the plaintiff take nothing by reason of this action, and he have judgment for costs and such other and further relief as he may be entitled to.

To such answer of the defendant the plaintiff filed a reply, consisting of a general denial, and further alleging that if the defendant placed improvements upon said premises, the same was done without her knowledge and consent and that she was not benefited thereby, and that the defendant had received rents and profits from the premises to the amount of $500, to her damages in such sum.

During the progress of the trial, and while the defendant was upon the stand testifying in his own behalf, the following proceedings were had, to wit:

"Q. Do you know the amount that your improvements cost, the five-room bungalow? A. Approximately, but not exactly. Q. Tell the jury the amount. By Mr. Harrod: That's objected to as incompetent, irrelevant, and immaterial. By the Court: That cannot be determined in this action, can it? By Mr. Shirk: I think it can. (Thereupon the jury is excused during the argument of counsel upon the question as to whether or not the amount of the improvements may be determined in this case.) 'It is stipulated by and between the parties in this action that in order that all the rights of the parties in the premises be determined in this suit and that the rights of the defendant as an occupying claimant under the statute may be determined (the rights of the defendant as an occupying claimant under the statutes) if he in fact does occupy that position in law in this case, that the value of improvements made by the defendant upon the premises in question be submitted by special interrogatory and that the question of the improvements made by the defendant at the time of the institution of this suit be submitted by interrogatories to the jury and that the court upon such interrogatories so submitted may enter judgment.' How does that suit you?

By Mr. Shirk: There is no objection to it so far as we are concerned. By Mr. Harrod: I would like for the records to show that we don't claim that the defendant in this case is entitled to the statutes alluded to by the court or by the counsel who represents the defendant. By The Court: 'It is further conditioned, so the stipulation may be clear,—it is further conditioned that if the defendant does not in law occupy the position of occupying claimant under all the facts in evidence that the rights of neither parties shall be prejudiced by this stipulation.' By Mr. Shirk: That is acceptable to us. By Mr. Harrod: All right then, we will accept it."

At the conclusion of the trial the court submitted three interrogatories, which, together with the answers of the jury thereto, were as follows:

"Interrogatory No. One

"What was the actual value of what has been known and described in the evidence as the five-room bungalow, and cement sidewalks placed upon the premises in question, by the defendant at the time of receiving actual notice by the commencement of this action? Answer. $1,602.70.

"O. E. Stickley, Foreman.

"Interrogatory No. Two.

"What is the value of the new bungalow from the date of the summons issued in this case, to wit, January 5th, 1917, to this date? Answer. $275.00.

"O. E. Stickley, Foreman."

"Interrogatory No. Three.

"What is the value of the five-room bungalow and cement sidewalks as lasting,

valuable and permanent improvements at this time? Answer. $2,400.00.

"O. E. Stickley, Foreman."

And in addition to answering the interrogatories, the jury returned the following general verdict:

"We, the jury empaneled and sworn in the above entitled cause, do upon our oath find for the defendant and fix amount of his recovery at $4,102.70.

"(1,327.70)
"(5,430.40)
"O. E. Stickley, Foreman."

The plaintiff filed a motion for judgment on special findings of the jury to the effect that the court render judgment in favor of the defendant in the sum of $2,225, and upon payment of such sum by plaintiff at such time as the court might fix, to convey the premises by good and sufficient deed to the premises to the plaintiff, and filed a motion for a new trial in the event that the court should overrule the foregoing motion for judgment, the latter motion based upon 15 specifications of error; and the defendant filed a motion for judgment in his favor in the sum of $2,400, the amount found by the jury in its answer to interrogatory 3, and that the same be in addition to $2,500 the jury found due the defendant on a note executed by plaintiff on the first day of November, 1913, including interest, taxes, and insurance premiums advanced. And the defendant also filed a motion that the findings of the jury be adopted and become a part of the judgment.

The court, upon hearing said motion, on the 30th day of March, 1918, made the following findings and judgment:

"Now on this 30th day of March, 1918, court duly convened pursuant to adjournment, the motion for new trial in the above entitled cause coming regularly on for hearing.

"Thereupon after argument, court being fully advised in the premises, made and entered the following order:

"By the Court: This case comes on for the entering of judgment on the general verdict returned in this case and on the findings of the jury. The court finds that the defendant Green entered upon the premises in question under the warranty deed executed by the plaintiff to the defendant in the bona fide belief that he was the owner and that title in fee simple vested in him.

"The court further finds as a matter of law that the contract entered into in this case entitled the plaintiff in this case to relieve the property in question upon full payment of the indebtedness found by the jury in it's general verdict in the sum of $4,102.70, together with interest at the rate of six per cent. per annum from the date of the returning of the verdict, to wit, January 25, 1916, and payment of $1,602.70, being the amount due under interrogatory number one submitted to the jury, together with interest at the rate of six per cent. per annum from January 5, 1917, less the sum of $275.

"The court further finds that under the evidence in this case that was instructed to the jury that the defendant Green comes under section 4933 of the Harris-Day Code, under what is known as the Occupying Claimants Act. It will therefore be the judgment of this court that the defendant have and recover judgment against the plaintiff in the sum of $4,102.70, together with interest at the rate of six per cent. per annum from January 25, 1918, and the sum of $1,602.70, less a credit thereon of $275, being $1,327.70 net, which said amount to bear interest at the rate of six per cent. per annum from January 5, 1917, making a total of $5,430,-40, of which amount $4,102.70 bears interest from January 25, 1918, at six per cent. and the remainder of $1,327.70 bears interest from January 5, 1917, at six per cent.

"That plaintiff has six months from this date to satisfy the above judgment, and that in default of the payment of said amount that an order of sale issue out of this court directing the sheriff to sell the property in question in satisfaction of the above judgment.

"It is further ordered and decreed that upon satisfaction of the above judgment within the term of six months that the defendant shall execute a good and warranty deed to the plaintiff in this case for the premises in question."

The defendant has filed no cross-petition in error, and counsel for defendant, in concluding their argument in their brief, say:

"When on the stand, the plaintiff was asked this plain, simple question: 'Are you willing to pay Mr. Green whatever this jury find is due and redeem your property if he will give you a deed to it?' to which she made answer as follows: 'Yes, sir.'

"We do not know why the plaintiff changed her ideas about paying the amount the jury might find as due, but we desire to go on record that it is indeed a very simple matter in arithmetic to determine the amount on this date, or the date this case will be decided, and if the plaintiff, or any one for or on behalf of the plaintiff, brings to counsel for defendant the amount of money that is due, the reconveyance will be cheerfully made, and of which counsel for the plaintiff has been informed time and again.

"We feel no error was committed by the trial court. The plaintiff had an oppor-

tunity to and did present her views and theories and submitted certain receipts, papers, and documents in support of her contention, and a fair trial was had and the material and pertinent facts are very simple indeed, and the rule applicable so old and well defined that before this defendant should be put to further expense or required to have further litigation with the party or property, the plaintiff should be required to do equity."

In reply to this statement, counsel for plaintiff say in their reply brief:

"Defendant asserts that plaintiff has changed her views inasmuch as she said while on the stand that she was willing to pay what the jury decided due for a redemption. There is nothing in the record to show that she is not and has always been willing to pay this sum, it was $4,102.70; but she did not agree to pay in addition thereto, a mammoth sum added thereto by an erroneous calculation of the trial court."

Counsel for the plaintiff have assigned seven specifications of error in their brief, which are as follows:

"1. The district judge erred in overruling plaintiff's offer of judgment for $2,225.00 as set out in plaintiff's motion for offer of judgment and each ground thereof. Because the amount offered, $2,225, is all that is due on defendant's mortgage claim. And because the court had no legal and lawful right to impose upon plaintiff an additional burden of an independent improvement bungalow, of $3,205.70, or any other sum in order to redeem her home from defendant's mortgage claim.

"2. The district court erred in giving his instruction No. 2 to the jury, telling them that defendant was an occupying claimant; because defendant is a mortgagor; he has a lien, he has no color of title, his title is the mortgagor's title.

"3. The district court erred in imposing on plaintiff costly independent improvements without her consent and knowledge and thereby increased the burden of redeeming her home from the mortgage claim.

"4. The district court erred in each and all the errors assigned in the petition of errors annexed to the case-made.

"5. The district court erred in granting and giving judgment for $5,430.40, to which the plaintiff excepts and still excepts.

"6. The district court erred by refusing plaintiff the right of redemption upon payment of $2,225 from the mortgage claim, to which plaintiff excepts and still excepts.

"7. The district court erred by allowing judgment for the additional burden of the independent improvement, to which plaintiff excepts and still excepts."

Concerning which they say:

"1. There are but three questions, propositions, involved in this case, and they are as follows:

"A. What amount is due defendant on his mortgage claim for which the deed was executed February 3, 1915?

"B. Can the defendant place an independent improvement, a five-room bungalow, on the premises as a mortgagee without the consent and knowledge of mortgagor plaintiff, and impose the value of the improvement upon her and thereby increase the burden of redeeming from the mortgage claim?"

These propositions will be considered together.

Section 4933, Rev. Laws 1910, provides in part as follows:

"In all cases any occupying claimant * * * being in quiet possession of any lands or tenements for which such person can show a plain and connected title in law or equity derived from the records of some public office, * * * or by deed duly authenticated and recorded, * * * shall not be evicted or thrown out of possession by any person or persons who shall set up and prove an adverse and better title to such lands until such occupying claimant or his heirs shall be paid the full value of all lasting and valuable improvements made on such lands by such occupying claimants, * * * and all taxes paid thereon by such claimant, with interest, as provided for the redemption of lands sold for taxes, previous to receiving actual notice by the commencement of such suit on such adverse claim by which eviction may be effected."

Standifer v. Morris et al., 25 Okla. 802, 108 Pac. 413, was a case where the facts and equities of the parties were somewhat analogous to the facts and equities in the instant case. This court, in an opinion by Mr. Justice Kane, under the authorities cited in the opinion, stated:

"We think the beneficent principles of equity are broad enough to protect the plaintiff against an injustice of this kind without the aid of the occupying claimant's act. It has been held that:

" 'The adjustment of the rights of occupying claimants is a matter of equitable cognizance; and courts may, in addition to the relief provided by statute, and as supplementary thereto, make such orders as are equitable and just in matters not specifically provided for by the statute.' (Mercer v. Justice, 63 Kan. 225, 65 Pac. 219; Cleland v. Clark, 123 Mich. 179, 81 N. W. 1086, 81 Am. St. Rep. 161.)

" 'It is a well-settled principle of equity, moreover, that when a bona fide possessor of property makes meliorations upon it in good faith and under an honest belief of ownership, and the real owner is for any

reason compelled to come into court of equity for relief, that court, applying the familiar maxim that he who seeks equity must do equity, will compel him to pay for those improvements, as far as they are permanently beneficial to the estate and enhance its value.' (Story on Equity Jurisprudence. sec. 779; Pomeroy on Equity Jurisprudence [2nd Ed.] sec. 1241.)

"We think an application of the occupying claimant's act will work substantial justice between the parties to this suit, and that upon equitable grounds, the decree of foreclosure entered in this case ought to be set aside and one entered giving the plaintiff the benefit thereof." Huett et al. v. Goldsborough et al., 29 Okla. 667, 119 Pac. 983.

The plaintiff's suit was, in effect, one of equitable cognizance, the relief sought being, first, that her deed to the defendant on February 3, 1915, absolute on its face, be adjudged to be a mortgage; second, that an accounting he had between the plaintiff and defendant of all rents collected and all money advanced by him and for what purpose it was so advanced; third, that her right of redemption on payment by her of the amount found to be due the defendant be decreed. The defendant answered that the deed in question was not a mortgage and was an absolute conveyance; that he took possession of the premises under it in good faith, and that at all times thereafter, prior to the institution of this suit, for a period of about two years, had been in absolute possession of the premises in good faith, during which time he had made valuable and lasting improvements. Upon these issues the court found that the defendant entered upon the premises under a warranty deed executed by the plaintiff in a bona fide belief that he was the owner and that title in fee simple vested in him. The court found that as a matter of law the contract entered into in this cause entitled the plaintiff to relieve the property in question upon full payment of the indebtedness found by the jury with interest at the rate of 6 per cent. from date, which included the value of improvements placed upon the premises by the defendant at and prior to the time he was served with summons in this case, found to be by the jury and approved by the court in the sum of $1,602.70, with interest at 6 per cent. from the date of filing the suit, January 5, 1917, less the rental value as found by the jury and approved by the court in the sum of $275.

We cannot say that these findings of the court and the jury were clearly against the weight of the evidence, and there is no dispute but what the amount found to be due by the court on the note of the plaintiff with accrued interest, amounting to $2,500, was correct. These findings therefore must be approved by the court. Nowka v. West, 77 Okla. 24, 186 Pac. 220; Benn v. Trobert, 76 Okla. 184, 184 Pac. 595; Miller v. Kimmel, 76 Okla. 233, 184 Pac. 762; Miller v. Howard, 76 Okla. 237, 184 Pac. 773; Mobley v. Rhoades, 77 Okla. 64, 186 Pac. 230; Haynes' v. Gaines, 76 Okla. 268, 185 Pac. 74.

Having reached the conclusions announced, it therefore follows that the propositions argued by counsel for plaintiff are without merit.

We will next consider the judgment and decrees rendered by the trial court upon these findings, which were as follows:

"It will therefore be the judgment of this court that the defendant have and recover judgment against the plaintiff in the sum of $4,102.70, together with interest at the rate of six per cent. per annum from January 25, 1918, and the sum of $1,602.70, less a credit thereon of $275, being $1,327.70 net, which said amount to bear interest at the rate of six per cent. per annum from January 5, 1917, making a total of $5,430.40, of which amount $4,102.70 bears interest from January 25, 1918, at six per cent. and the remainder of $1,327.70 bears interest from January 5, 1917, at six per cent.

"That plaintiff has six months from this date to satisfy the above judgment and that in default of the payment of said amount that an order of sale issue out of this court directing the sheriff to sell the property in question in satisfaction of the above judgment.

"It is further ordered and decreed that upon satisfaction of the above judgment within the term of six months that the defendant shall execute a good and warranty deed to the plaintiff in this case for the premises in question."

It is quite clear to us that the amount of the defendant's judgment of $5.430.40 is not sustained by the evidence and is very much in excess of the specific amounts found by the jury and approved by the trial court in his findings of facts. The error, however, seems to be for the most part one in calculation. It is true that, in addition to the answers of the jury to the three interrogatories propounded by the court, the jury returned a general verdict, which in words and figures is as follows:

"We, the jury empaneled and sworn in the above entitled cause, do upon our oath find for the defendant and fix the amount of his recovery at $4.102.70.

"(1327.70)

"5430.40

"O. E. Stickley, Foreman."

This finding of the jury will be disregarded, first, because it is not sustained by any evidence in the total amount shown of $5,430.40; and, second, because the special findings of fact are **inconsistent with** the general findings, and in such circumstances the special findings must control. Section 5014, Rev. Laws 1910, provides:

"When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly." A., T. & S. F. Ry. Co. v. Johnson, 3 Okla. 55, 41 Pac. 641; Blevins v. A., T. & S. F. Ry. Co., 3 Okla. 524. 41 Pac. 92.

We think, as was said by this court in the case of Standifer v. Morris et al., supra, an application of the occupying claimant's act will work substantial justice between the parties to this suit, and that upon equitable grounds the finding of the court that the defendant, Green, entered upon the premises in question under a warranty deed executed by the plaintiff to the defendant in the bona fide belief that he was the owner and that title in fee simple vested in him, was amply sustained by the evidence, and likewise was the finding of the jury in favor of the defendant in the sum of $4,102.70, the amount due him for money loaned the plaintiff with accrued interest thereon. $2,500, and for $1,602.70 after adjusting between the parties the rental value of $275. against the amount paid by the defendant for repairs and taxes for the years 1915 and 1916.

The said two amounts of $2,500 and $1,602.70 exactly balancing the amounts stated in the general verdict of the jury of $4,102.70, and such finding of the court and jury as aforesaid, are approved. The judgment of the court in favor of the defendant should have been in said sum of $4,102.70, and no more; hence the judgment of the trial court in favor of the defendant for $5,430.40 is modified, so as to make the judgment read in the principal sum of $4,102.70, to bear interest as stated in the judgment of the trial court, and as thus modified the entire judgment of the trial court is in all other respects affirmed.

The cause is remanded, with directions to the trial court to take such further action in the matter of adjusting the equities between the parties in the matter of rents and taxes arising since the trial of the cause below, and in enforcing its judgment as modified, that may be necessary and not inconsistent with the findings herein.

HARRISON, C. J., and KANE, MILLER, and ELTING, JJ., concur.

MILLER, J. I concur in the conclusions reached in affirming the judgment of the trial court, for the reason that on the trial of the case in the district court the defendant was willing to let the plaintiff have the property on the payment of the amount due him. The contract invoked by the plaintiff was a contract authorizing a third person to purchase, and the deed did not constitute a mortgage, but the defendant did not object to the court construing it as a mortgage and let the plaintiff redeem from it as such. Under this ruling of the court, the defendant was a mortgagee in possession. The occupying claimants act cannot be invoked as against a mortgagee in possession because a mortgagee in possession does not hold adversely to the owner, Gillett v. Romig, 17 Okla. 324, 87 Pac. 325; Page v. Turk, 43 Okla. 667, 143 Pac. 1047; Snell v. Michan (Iowa) 45 N. W. 398; Mason v. Richards, 32 Mass. 14; 15 Cyc. 224.

This was purely an equitable action asking the court to decree a deed absolute on its face to be a mortgage. The defendant consented that it might be so construed by the court, and under the facts in this case as shown by the record the defendant was entitled in equity to recover the full amount due him for money loaned, with interest thereon, which was found to be $2,500, and the further sum of $2,400 found by the jury to be the value of the improvements he had placed thereon. The judgment should require the plaintiff in error to pay $4,900, with interest, in order to redeem the property.